UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN MCLEAN and
GAIL CLIFFORD,

        Plaintiffs,

vs.

        Case No. 09-CV-11239
        HON. GEORGE CARAM STEEH

COUNTRYWIDE HOME LOANS, INC.,
and FIFTH THIRD MORTGAGE COMPANY,

        Defendants.

_____/

## ORDER GRANTING DEFENDANT COUNTRYWIDE'S MOTION TO DISMISS (# 20) AND DISMISSING COUNTRYWIDE FROM THIS LAWSUIT

Defendant Countrywide Home Loans, Inc. moves to dismiss plaintiffs Brian McClean's and Gail Gifford's amended claims of fraudulent misrepresentation and negligent misrepresentation. Oral argument would not significantly aid the decisional process. Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is ORDERED that the motion be resolved without oral argument.

Plaintiffs purchased the real property commonly known as 5538 Arbor Bay Drive, Brighton, Michigan 48116, in 2006 for $1,550,000.00, using a $1,000,000.00 "senior" loan from Countrywide, and a "junior" $400,000.00 loan from defendant Fifth Third Bank. On August 27, 2009, this court granted Countrywide's earlier motion to dismiss the plaintiffs' claims seeking an accounting, rescission, and reformation, and alleging claims of wrongful foreclosure, violations of the Truth in Lending Act, predatory lending, fraudulent misrepresentation, negligent misrepresentation, violation of the Fair Credit Reporting Act, violation of Michigan's Brokers, Lenders, and Servicers Licensing Act, and usury. Plaintiffs'

fraudulent misrepresentation and negligent misrepresentation claims were dismissed for failure to plead the claims with particularity as required by Federal Rule of Civil Procedure 9(b).  August 27, 2009 Order, at 11.  Plaintiffs were granted leave to file amended fraudulent misrepresentation and negligent misrepresentation claims to cure the deficiency. Id at 12.  Plaintiffs filed a First Amended Complaint on September 18, 2009.  Countrywide filed the instant motion to dismiss the amended fraudulent misrepresentation and negligent misrepresentation claims on September 30, 2009.

>Plaintiffs allege in their First Amended Complaint:
>
>8.  Plaintiffs purchased the Property in 2006 for about one million five hundred fifty thousand ($1,550,000.00) dollars.
>
>9.  Defendants structured the financing of the purchase of the Property as a "senior/junior" loan with Countrywide servicing the senior position and Fifth Third owning and/or servicing the junior position.
>
>10.  The senior lien was for one million ($1,000,000.00) dollars.
>
>11.  The junior lien was for about four hundred thousand ($400,000.00) dollars.
>
>12.  In addition, Plaintiffs paid $136,500.00 towards the purchase price prior to closing on top of a previously-paid $30,000.00 deposit.
>
>13.  Plaintiffs could not afford the Property on the financing terms employed by Defendants.
>
>14.  The Uniform Residential Loan Application created by Defendants in connection with the closing on the loans at issue contains misstatements of fact with respect to Plaintiffs' ability to pay the loans.  (See "Exhibit A – **Uniform Residential Loan Application**").
>
>15.  Specifically, Defendants fraudulently stated that Plaintiffs made $5,200.00 per month leasing out rental properties.
>
>16.  However, these statements were patently false.
>
>17. In reality, Plaintiffs earned about $19,000.00 per month in gross income.  However, including the payments on the loans at issue in this litigation, Plaintiffs had nearly $17,000.00 in loan obligations per month.  After paying income tax, Plaintiffs had a net monthly loss as a direct result of the financing scheme utilized by the Defendants.  (Exhibit A).

> 18. Plaintiffs were induced into obtaining the loans based upon the representations made to Plaintiffs by Defendants' agent Tom Carmody on or about March 23, 2005.
>
> 19. Specifically, Defendants' agent told Plaintiffs that their home was worth over $1,500.000.00 and the purchase price was an adequate reflection of the fair market value of the home.
>
> 20. Furthermore, Defendants' agent informed Plaintiffs that if making their monthly payments became problematic, Plaintiffs would be able to sell their home for a substantial profit, or refinance the mortgage loans in order to obtain a more manageable monthly payment.
>
> 21. When Plaintiffs expressed their concern about potentially not being able to afford this mortgage obligation, Defendants' agent assured Plaintiffs that their combined monthly income would be more than enough to meet the monthly payments while still living comfortably financially.
>
> 22. All these representations made by Defendants, or on Defendants' behalf proved to be patently false and fabricated by Defendants in order to induce Plaintiffs into obtaining the loans.

First Amended Complaint, at 3-4. Based on these allegations, plaintiffs allege fraudulent misrepresentation and negligent misrepresentation. Id. at 5-7.

Countrywide moves to dismiss the amended fraudulent and negligent misrepresentation claims arguing the claims again fail to meet the particularity requirements of Federal Rule of Civil Procedure 9(b). Countrywide also argues that the plaintiffs could not have reasonably relied on any alleged misrepresentations in the Uniform Residential Loan Application because plaintiffs themselves signed the document, and in doing so, represented that "the information provided in this application is true and correct as of the date set forth opposite my signature[.]"  Countrywide asserts that the alleged misrepresentation regarding the appraised $1.5 million value of the property is not actionable because the plaintiffs had the means to reappraise the property before executing the loan. Countrywide maintains that the alleged statements that the plaintiffs could financially afford the property, and that they would be able to resell the property at a profit or refinance the loans if they found they could not make the loan payments, are not

3

actionable because the statements constitute contractual "puffing," opinions as opposed to past or existing facts, or future promises. Countrywide maintains that any alleged promise to refinance the loans in the future is unenforceable under Michigan's statute of frauds, M.C.L. § 566.132(2).

Federal Rule of Civil Procedure 12(b)(6) authorizes the court to assess whether the plaintiff has stated a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in favor of the plaintiff, accept the factual allegations of the complaint as true, and determine whether the allegations present plausible claims. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007). To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. Although the complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (citing Twombly, 127 S. Ct. at 1965).

In conducting this Rule 12(b)(6) analysis, a district court should first identify any conclusory allegations and bare assertions in the complaint that are not entitled to an assumption of truth. Ashcroft v. Iqbal, — U.S. — ; 129 S.Ct. 1937, 1951 (2009). The district court should then consider the factual allegations that are entitled to a presumption of truth and determine if they plausibly suggest entitlement to relief. Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief." Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Plaintiffs' amended claims of fraudulent and negligent misrepresentation meet the

4

pleading requirements of Rule 9(b) by identifying the statements the plaintiffs contend are fraudulent, the speaker, where and when the statements were made, and an explanation why the defendants believe the statements were fraudulent. See Frank v. Dana Corp., 547 F.3rd 564, 569-570 (6th Cir. 2008). Plaintiffs allege that Countrywide made misrepresentations in the March 23, 2005 Uniform Residential Loan Application that plaintiffs made $5,200.00 per month leasing out rental properties. Plaintiffs allege that Countrywide's agent Tom Carmody misrepresented on or about March 23, 2005 that the Troy property was worth over $1,500,000.00, that the $1,550,000.00 purchase price set forth in the March 23, 2005 Uniform Residential Loan Application was an adequate reflection of the fair market value of the home, that if the plaintiffs encountered problems making their loan payments they would be able to sell the home for a substantial profit or refinance the loan, and that the plaintiffs' combined monthly income would be more than enough to meet the monthly payments while still living comfortably financially. Id. Plaintiffs allege they ultimately purchased the home in 2006.

Fraudulent misrepresentation requires proof of a false misrepresentation made by the defendant knowing it was false, or made with reckless disregard for the truth. Bergen v. Baker, 264 Mich. App. 376, 382, 691 N.W.2d 770 (2004). Negligent misrepresentation requires proof that the defendant provided information without reasonable care to a plaintiff to whom a duty was owed. Law Offices of Lawrence J. Stockler, P.C. v. Rose, 174 Mich. App. 14, 33, 436 N.W.2d 70 (1989). Fraudulent misrepresentation and negligent misrepresentation each require proof of a misrepresentation of a past or existing fact. Boumelhem v. BIC Corporation, 211 Mich. App. 175, 184, 535 N.W.2d 574 (1995) (citing Marrero v. McDonnell Douglas Capital Corp., 200 Mich. App. 438, 444, 505 N.W.2d 275 (1993); City Nat'l Bank of Detroit v. Rodgers & Morgenstein, 155 Mich. App. 318, 323, 399 N.W.2d 505 (1986)). Broken future promises do not constitute fraud, nor evidence of fraud.

Marrero, 200 Mich. App. at 444. Fraudulent misrepresentation and negligent misrepresentation also each require proof of reasonable or justifiable reliance. Nieves v. Bell Industries, Inc., 204 Mich. App. 459, 464, 517 N.W.2d 235 (1994); Stockler, 174 Mich. App. at 33. "[T]here can be no fraud where the means of knowledge regrading the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant." Webb v. First of Michigan Corp., 195 Mich. App. 470, 474, 491 N.W.2d 851 (1992)). "[A] plaintiff cannot claim to have been defrauded where he had information available to him that he chose to ignore." Nieves, 204 Mich. App. at 464.

Construing the factual allegations in a light most favorable to the plaintiffs, plaintiffs have failed to allege plausible claims of fraudulent misrepresentation or negligent misrepresentation. Iqbal, 129 S.Ct. at 1951; Twombly, 127 S.Ct. at 1964-65. Plaintiffs allegation that the March 23, 2005 Uniform Residential Loan Application misrepresented that plaintiffs made $5,200.00 per month leasing out rental properties fails for lack of reasonable and justifiable reliance in that plaintiffs had personal knowledge of their own incomes. Webb, 195 Mich. App. at 474; Nieves, 204 Mich. App. at 464; Stockler, 174 Mich. App. at 33. Plaintiffs do not allege facts allowing for a reasonable inference that Countrywide somehow prohibited plaintiffs from accurately assessing the income plaintiffs earned renting out properties. Id. Plaintiffs do not allege that they were prevented from reading the Uniform Residential Loan Application. Id. Plaintiffs' self-serving attestations that they relied upon the numbers set forth in the Uniform Residential Loan Application fall short of establishing a plausible finding of reasonable or justifiable reliance. See Evans v. Ameriquest Mortgage Co., No. 233115, 2003 WL 734169, *1 (Mich. Ct. App. Mar. 4, 2003) (reasoning that "[b]ecause defendants did not prohibit plaintiffs from reading the documents, plaintiffs cannot claim fraud based on an alleged misrepresentation clearly

contradicted by the documents.").

Plaintiffs' allegations that Carmody misrepresented on March 23, 2005 that the property was worth over $1,500,000.00, and that the $1,550,000.00 purchase price adequately reflected the home's fair market value, likewise fail for lack of reasonable or justifiable reliance. Webb, 195 Mich. App. at 474; Nieves, 204 Mich. App. at 464; Stockler, 174 Mich. App. at 33. The representations were allegedly made over eight months before the loan allegedly closed in late 2005. Plaintiffs do not allege that Countrywide provided fraudulent appraisals of the property, or prevented plaintiffs from acquiring independent appraisals before closing. Id. Plaintiffs do not allege the "true" fair market value of the property when Carmody made his alleged misrepresentation concerning the value of the property. At best, the court can do no more than infer the mere possibility of misconduct, an inference that is insufficient to show a plausible claim for relief. Iqbal, 129 S.Ct. at 1951.

Carmody's alleged March 23, 2005 representations that the plaintiffs would later be able to sell the home for a substantial profit or refinance the loan, and that the plaintiffs' income would be more than enough to meet the monthly loan payments while allowing plaintiffs to remain living comfortably, are not actionable representations of past or existing facts. Boumelhem, 211 Mich. App. at 184; Marrero, 200 Mich. App. at 444. The allegations instead involve predictions for the future. Id. Further, plaintiffs could not reasonably rely on representations made in 2005 that they would be able to resell their home at a profit, or refinance the loan, four years later in 2009. Carmody's alleged representation that plaintiffs would be able to remain "living comfortably financially" constitutes mere contractual "puffing." See Webb, 195 Mich. App. at 474. Again, the allegations raise only a possible inference of misconduct, an inference that is insufficient to show a plausible claim of fraudulent or negligent misrepresentation. Iqbal, 129 S.Ct. at

7

1951.

Plaintiffs have not alleged that Countrywide is liable for breach of a contract to refinance or sell the property.  Accordingly, the court does not address Countrywide's statute of frauds defense.

For the reasons set forth above, Countrywide's motion to dismiss is hereby GRANTED.  Plaintiffs' amended claims of fraudulent misrepresentation and negligent misrepresentation are hereby DISMISSED with prejudice.  Countrywide is hereby DISMISSED from this lawsuit.

SO ORDERED.

Dated:  December 22, 2009

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on December 22, 2009, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk